# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8881 | **DATE** | November 26, 2003 |
| **CASE TITLE** | LUTTRELL vs. CERTIFIED GROCERS MIDWEST | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted in part and denied in part. All previously set dates shall stand.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC X 1 2003 | |
| ✓ | Notified counsel by telephone. | date docketed | 41 |
| | Docketing to mail notices. | IS | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | date mailed notice | |
| JS | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID M. LUTTRELL, )
)
Plaintiff, )
)
v. )
) No. 02 C 8881
CERTIFIED GROCERS MIDWEST, INC. )
)
Defendants. )
)
)
)

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On December 9, 2003, plaintiff David M. Luttrell ("Luttrell") filed a two-count complaint against defendant Certified Grocers Midwest, Inc. ("Certified") alleging discrimination because of a hostile work environment and intentional infliction of emotional distress ("IIED"). Luttrell's hostile work environment claim is based upon alleged coworker discrimination in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. On September 30, 2003, Certified moved for summary judgment on the grounds that (1) Luttrell is not disabled; (2) Certified is not liable for the alleged coworker harassment; (3) the alleged harassment did not create a hostile working environment; and (4) Luttrell's IIED claim is not only legally deficient but also preempted by the Illinois Workers Compensation Act ("IWCA"). Certified further alleged, in its reply brief, that Luttrell's IIED claim is also preempted by the Illinois Human Rights Act ("IHRA"). While this case presents an extremely close question, for the following reasons, Certified's motion for summary judgment is denied as to Luttrell's claim that it is liable

1

for his alleged hostile working environment. Certified's motion for summary judgment is granted as to Luttrell's IIED claim.

## FACTS

Plaintiff Luttrell has been employed by defendant Certified since 1996 as a selector/loader in Certified's freezer warehouse. Luttrell has been diagnosed with cerebral palsy, and, as a result of this disease his left hand is physically deformed. Luttrell claims that his left hand is no more helpful than a hook.[1] This case concerns various allegations by Luttrell, discussed in more detail below, that he was subjected to various acts of coworker discrimination, including offensive graffiti, name-calling, and physical threats, during his employment with Certified. Luttrell first reported an incident of offensive graffiti to his supervisor during the winter of 2001. Almost a month later, Luttrell reported to the same supervisor that the offensive graffiti had not been removed and that more offensive graffiti had been written. Around this time a supervisor trainee, who had responsibility for part of a shift, witnessed a coworker physically threatening Luttrell. This physical threat grew out of an incident where the coworker was verbally harassing Luttrell regarding Luttrell's disability.

In 2002 Luttrell made another report to Certified regarding physical threats from the same coworker, but the parties dispute the adequacy of the report. It is undisputed that in 2003 Luttrell made a final complaint to Certified regarding physical harassment from the same coworker, and that the coworker was eventually terminated because of this last reported incident. On January 14, 2002, Luttrell filed a charge with the Equal Employment Opportunity

---

[1] On May 7, 2001, Luttrell filed a charge with the Illinois Department of Human Rights alleging that Certified failed to accommodate his disability. Later that year both parties reached a settlement regarding Luttrell's charge.

Commission alleging that he was being harassed at work because of a disability. Certified claims that it has always acted properly in regard to any complaint of coworker harassment.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." All evidence must be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, inferences in favor of the nonmoving party must be legitimate and justifiable. Id. The court's function is not to weigh evidence or make credibility determinations, but to determine whether there is an issue for trial. Id. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

## ANALYSIS

I. Hostile Work Environment

A. Luttrell's Alleged Disability

There is a genuine issue of material fact as to whether Luttrell is disabled within the meaning of the ADA. To be actually disabled under the ADA, a person must have a physical or mental impairment that substantially limits one or more of the major life activities of such individual. 28 U.S.C. § 12102(2)(A). "[T]o be substantially limited in performing [a major life activity], an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."

3

Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002). Certified admits that Luttrell's cerebral palsy, and resulting deformity in his left hand, is a physical impairment, but argues that Luttrell's "mild cerebral palsy is not a disability" (Def.'s Mem. at 3) because it "does not substantially limit any of his major life activities" (Id. at 4). Certified further argues that Luttrell cannot be disabled because: Luttrell's medical records describe him as being "a higher functioning patient," he walks with a normal gait, retains full motion in his left shoulder, and has been able, apparently, to sufficiently perform his job, which consists of manual labor. (Id.) Certified does note that Luttrell has reduced fine motor function in his left hand, but argues that this does not rise to the level of "disability," and points to case law finding individuals with a similar hand impairment not disabled under the terms of the ADA. (Id.). The question for this court, however, is not whether reduced fine motor coordination constitutes a disability, but what effect this impairment has upon the major life activities of Luttrell that are also activities of central importance to most people's lives.

Unfortunately, Luttrell does not point to any specific major life activity that is substantially limited by his physical impairment, even though this is an issue on which he has the ultimate burden of proof. Nevertheless, Luttrell does provide evidence that his left hand is no more helpful than a "hook" and that he cannot hold a utensil such as a fork or knife in that hand, cannot button his clothes without help, and that it takes him three times as long as others to dress himself because of his disability.[2] Viewing this evidence in the light most favorable to Luttrell, a reasonable jury could find that he is limited in his ability to care for himself. 45 C.F.R. §

---

[2]Luttrell failed to include these last facts regarding his ability to dress himself in his statement of facts, but the court will overlook this transgression of the local rules and consider the facts of disability as presented in Luttrell's declaration. (Pl.'s Ex. 23.)

4

84.3(j)(2)(ii); Fenney v. Dakota, Minnesota & Eastern R.R., 327 F.3d 707, 714 (8th Cir. 2003) (holding the plaintiff is disabled in the major life activity of caring for himself). Thus, Certified is not entitled to summary judgment on this issue.

B. Hostile Work Environment

While it is a close question, there also exists a genuine issue of material fact as to whether Luttrell's working environment was hostile. To establish a hostile workplace environment, the plaintiff must show that the work environment was both subjectively and objectively hostile. Durkin v. City of Chicago, 341 F.3d 606, 612 (7th Cir. 2003); Silk v. City of Chicago, 194 F.3d 788, 803-04 (7th Cir. 1999) (assuming, without deciding, that the ADA provides for a hostile work environment claim).[3] Only harassment that is so severe or pervasive as to alter the conditions of employment can create a hostile working environment. Id. To establish a subjectively hostile work environment, Luttrell claims that the harassment has caused him loss of enjoyment of life, difficulties at home, the need to seek mental health treatment, and a host of physical and mental ailments. (Pl.'s 56.1(b) Stmt. ¶¶ 280-84.) To establish an objectively hostile work environment, Luttrell puts forth evidence that the word "flipper" (allegedly a nickname given to him because of his deformed left hand), hand drawn pictures of dolphins, and the word "crybaby" (allegedly written in retaliation for Luttrell complaining of his harassment) were written extensively throughout the workplace. This graffiti was allegedly on the machine where Luttrell worked (Pl.'s 56.1(b) Stmt. ¶ 212), in the men's bathroom (Id. ¶ 241), on the bins in the frozen food warehouse where Luttrell worked (Id. ¶ 247), on the

---

[3] Neither Certified nor Luttrell address the issue of whether a hostile work environment claim exists under the ADA. This court, therefore, will assume for the purpose of deciding this motion that it does.

5

cafeteria table (Id. ¶ 265), and on a picnic table outside the freezer warehouse (Id. ¶ 272). In addition to other isolated ridicule, it is undisputed that Luttrell was physically threatened or intimated on at least four occasions.[4] (Def.'s 56.1(a) Stmt. ¶¶ 37-38 at 11, 48, 58). There is also evidence that Luttrell was subjected to name-calling, in addition to the written graffiti, such as "cripple," "retard," and "Flipper" (Pl.'s 56.1(b) Stmt. ¶¶ 93-95, 252), and at least one such incident of name-calling occurred over the public address system in the warehouse (Def.'s 56.1(a) Stmt. at 45).[5] However, Luttrell does not establish the frequency of this name-calling.[6]

As with other issues in this case, the existence of a hostile environment at Luttrell's workplace is a close question. The frequency of the name-calling alleged by Luttrell is not established, nor is it clear how long the offensive graffiti existed. These facts are significant because the law "does not prohibit all verbal or physical harassment in the workplace," Durkin, 341 F.3d at 804 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998)), but only that harassment that is severe or pervasive. Furthermore, the court attaches great

---

[4]Luttrell's statement of facts ¶¶ 259-64 contains allegations of physical threats and intimidation similar to, but not exactly the same as, Certified's statement of facts. However, Luttrell's allegations contain no citation to the record. Therefore, this court cannot consider these allegations. This failure to comply with the local rule in regard to these crucial facts is especially frustrating considering the forty-one pages of additional facts submitted by Luttrell – much of it unnecessary to the disposition of this motion.

[5]Luttrell's memorandum of law states this fact regarding the public address system (Pl.'s Mem. at 2), but the paragraph to which the statement of facts cites does not support this allegation.

[6]In his memorandum of law, Luttrell argues that the name-calling occurred "daily." (Pl.'s Mem. at 2). However, the paragraphs to which the statement cited only address the fact that name-calling occurred, and do not address its frequency.

significance to the physical intimidation allegedly suffered by Luttrell, but Luttrell neither establishes that he was physically assaulted, nor does the conceded physical intimidation necessarily relate to Luttrell's disability, nor does Luttrell establish that the alleged intimidation subjectively harmed him. Nevertheless, viewing the facts in the light most favorable to Luttrell, as is required at this stage in the litigation, the court finds that an issue of fact exists as to whether Luttrell's working environment was hostile, and, therefore, denies Certified's motion for summary judgment on this ground.

### C. Certified's Liability

There also exists a genuine issue of material fact as to whether Certified is liable for the alleged coworker harassment. To hold Certified liable for coworker harassment, Luttrell must show that Certified was negligent in either discovering or remedying the harassment. Durkin, 341 F.3d at 612. This court finds at least three instances in early 2001 where management personnel at Certified who were directly above Luttrell in the chain of command were aware of the discrimination of which Luttrell complained.

First, it is established that around February of 2001, Luttrell complained to first-shift supervisor Ken Faust (Def.'s 56.1(a) Stmt. ¶ 13) about the word "Flipper" being written on a machine (Id. ¶ 30). Luttrell alleges that the machine complained of was the one he used. (Pl.'s 56.1(b) Stmt. ¶ 212). Notwithstanding Certified's protestations to the contrary (Def.'s Reply Mem. at 7), Luttrell also established that Faust knew this graffiti on the machine related to Luttrell's deformed left hand (Pl.'s 56.1(b) Stmt. ¶ 213 (citing to ¶ 20 of Plaintiff's Request for Admission of Facts where Certified admits "that said graffiti was related to Plaintiff's left

hand.")).[7] Second, Luttrell also establishes that about a month later, he again complained to Faust about the existence of the same graffiti on the machine, and that more offensive graffiti that had been added. (Pl.'s 56.1(b) Stmt. ¶ 228.)

Third, and finally, around the same time as this second complaint to supervisor Faust, Luttrell was twice physically threatened by a coworker. (Def.'s 56.1(a) Stmt. ¶ 37 at 11.) Amanuel Menghesha, a supervisor trainee, witnessed one of these incidents. (Id. ¶ 38 at 11.) The physical threat witnessed by Menghesha grew out of verbal harassment by the same coworker regarding Luttrell's disability. (Id. ¶ 256; Def.'s 56.1(a) Stmt. ¶ 38 at 11.) Luttrell states that Menghesha was a supervisor when he witnessed the physical confrontation (Pl.'s 56.1(b) Stmt. ¶ 257), but the deposition of Menghesha to which Luttrell cites only supports the fact that Menghesha was a trainee. (Pl.'s Ex. 6 at 25-26.) Certified argues that Menghesha was only a "trainee," but also concedes that Menghesha was "partially responsible" for a shift. (Def.'s 56.1(a) Stmt. ¶ 13.) The evidence also establishes that Menghesha took no action whatsoever in regard to the coworker physically threatening Luttrell. (Pl.'s 56.1(b) Stmt. ¶ 257). Thus, viewing the facts in the light most favorable to Luttrell, in early 2001 Luttrell reported two incidents of offensive graffiti to his supervisor, and an individual with responsibility for Luttrell's shift witnessed an incident where verbal harassment regarding Luttrell's disability escalated into physical threats.

The issue of whether Certified was either negligent in being aware of or remedying Luttrell's alleged harassment is an extremely close question, even when viewing the facts in a

---

[7]The court notes that Ken Faust, in his actual deposition, states that when he took the pictures of the graffiti on the machine he did not know that the term "flipper" referred to Luttrell's deformed hand. (Pl.'s Ex. 8 at 116.)

8

light most favorable to the plaintiff. Prior to filing an EEOC charge, Luttrell only made the two reports described above to the same supervisor, and Luttrell never reported the physical harassment he has alleged.[8] "Harassment laws cannot be effective if incidents are not reported." Silk, 194 F.3d 807 (finding that the one complaint to management in that case was not sufficient to put employer on notice regarding harassment). Furthermore, even though the graffiti was not removed after Luttrell's first report, Luttrell concedes that the graffiti was eventually removed. (Pl.'s 56.1(b) Stmt. ¶ 227.) And while Luttrell alleges that offensive graffiti was present on several occasions and in several locations, he does not establish that Certified failed to take steps to deal with the problem. And while it is also undisputed that Menghesha failed to take any action regarding the threats and harassment he witnessed, it is also undisputed that Luttrell failed to formally report that incident and that the alleged harasser was eventually fired due to a report from Luttrell. While admitting the question is extremely close, the court finds that, viewing the evidence in a light most favorable to Luttrell, a reasonable jury could find that Certified was negligent in either discovering or remedying Luttrell's alleged harassment.

II. <u>Intentional Infliction of Emotional Distress</u>

Finally, Luttrell's allegation of intentional infliction of emotional distress must be dismissed because it is preempted by the Illinois Human Rights Act ("IHRA"). Krocka v. City of Chicago, 203 F.3d 507, 516-517 (7th Cir. 2000) (IHRA preempted intentional infliction of emotional distress claim that was based upon comments referring to employee's disability). The IHRA "preempts tort claims that are 'inextricably linked' to allegations of [disability

---

[8] Luttrell, in one paragraph of his 355 paragraphs of additional facts, notes that "Luttrell reported the graffiti all the time" (Pl.'s 56.1(b) Stmt. ¶ 240), but does not set forth this fact in his argument that Certified was on notice. Given the court's disposition of this motion, however, the court need not address the significance of this allegation.

discrimination]." Quantock v. Shared Marketing Services, Inc., 312 F.3d 899, 905 (7th Cir. 2002). Luttrell's "claim of intentional infliction of emotional distress is supported by factual allegations identical to those set forth in his" ADA claim. Id. Therefore, this claim, like the one in Quantock, is preempted. The court realizes that because Certified, in its motion for summary judgment, only argued that the IIED claim was preempted by the Illinois Workers Compensation Act, and only later in its reply argued that the claim was preempted by the IHRA, that Luttrell has not had the opportunity to respond to this argument. Nevertheless, the court believes that Luttrell's IIED claim is effectively foreclosed, and, therefore, grants Certified's motion for summary judgment on this issue.

## CONCLUSION

For the foregoing reasons Certified's motion for summary judgment is denied as to Luttrell's hostile work environment claim and granted as to Luttrell's claim of intentional infliction of emotional distress. This case presents extremely close questions as to whether Luttrell was subjected to a hostile environment, Certified's liability for that environment, and whether Luttrell is actually disabled within the terms of the ADA. The court could envision a factfinder deciding for either party. As such, the parties are strongly urged to discuss settlement.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: November 26, 2003